**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**OLINSKY & ASSOCIATES, PLLC,**

                                        **Plaintiff,**
        **vs.**

                                                                **5:20-CV-01142**
                                                                **(MAD/ATB)**

**MATTHEW F. NUTTING, and**
**THE PEOPLE'S REPRESENTATIVE, LLC,**

                                        **Defendants.**
_____

**MATTHEW F. NUTTING, and**
**THE PEOPLE'S REPRESENTATIVE, LLC,**

                                        **Counter-Plaintiffs,**
                **vs.**


**HOWARD D. OLINSKY, MEGAN**
**WICKLUND, EDWARD WICKLUND,**
**JOHN MCDONOUGH, KRISTI FANELLI,**
**and OLINSKY & ASSOCIATES, PLLC,**

                                        **Counter-Defendants.**
_____


**APPEARANCES:**                          **OF COUNSEL:**

**BARCLAY DAMON, LLP**                     **JOHN JOSEPH PELLIGRA, ESQ.**
Barclay Damon Tower                        **MICHAEL A. OROPALLO, ESQ.**
125 East Jefferson Street                  **KAYLA A. ARIAS, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff and
Counter-Defendants

1

**LAW OFFICE OF RUI O. SANTOS, ESQ.**   **RUI OLIVEIRA SANTOS, ESQ.**
9 Tracy Place
Tinton Falls, New Jersey 07724
Attorneys for Defendants

**OFFICE OF ROBERT E. PURCELL**   **ROBERT E. PURCELL, ESQ.**
211 West Jefferson Street, Suite 24
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On September 18, 2020, Plaintiff, Olinsky & Associates, PLLC, (hereinafter "Olinsky")

filed this action against Defendants Matthew Nutting and The People's Representative, LLC,

(collectively "Defendants"). Dkt. No. 1. Plaintiff asserted claims against Defendants for

violations of the Lanham Act, including trademark infringement, unfair competition, dilution, and

cybersquatting. *Id.* Plaintiff also asserted claims for unfair competition, false advertising, and

deceptive business practices under New York General Business Law § 349(h) (hereinafter "N.Y.

G.B.L."). *Id.*

On October 12, 2020, Defendants filed an answer to Plaintiff's complaint and asserted four

affirmative defenses and four counterclaims. Dkt. No. 9. As affirmative defenses, Defendants

asserted acquiescence, equitable estoppel, laches, and illegality. *Id.* at ¶¶ 125-32. Defendants

also asserted claims against Plaintiff and Counter-Defendants Howard D. Olinsky, Megan

Wicklund, Edward Wicklund, John McDonough, and Kristi Fanelli (hereinafter "Counter-

Defendants"), for violations of the Lanham Act, common law unfair competition, and violations

of N.Y. G.B.L. §§ 349, 350. *Id.* at ¶¶ 139-59. On November 11, 2020, Plaintiff and the Counter-

Defendants filed a reply answer asserting the following affirmative defenses, failure to state a claim, lack of standing, improper procedure, lack of confusion, fair use, failure to mitigate damages, lack of damages, and reservation of affirmative defenses. Dkt. No. 12.

On December 18, 2020, Defendants moved to strike Plaintiff and Counter-Defendants' affirmative defenses and filed a motion for summary judgment. Dkt. Nos. 27, 29. That day, Plaintiff filed a motion to dismiss Defendants' counterclaims. Dkt. No. 28. On January 4, 2021, Defendants filed an opposition to Plaintiff's motion to dismiss and Plaintiff and Counter-Defendants filed an opposition to Defendants' motion to strike and motion for summary judgment. Dkt. Nos. 31, 32, 33. On January 8, 2021, Defendants filed a reply to Plaintiff and Counter-Defendants' motion to dismiss, and Plaintiff filed a reply to Defendants' motion to strike and motion for summary judgment. Dkt. Nos. 34, 35, 36.

Currently before the Court are Defendants' motion to strike and motion for summary judgment, and Plaintiff and Counter-Defendants' motion to dismiss. Dkt. Nos. 27, 28, 29. As set forth below, Defendants' motion to strike is denied, Defendants' motion for summary judgment is denied, and Plaintiff and Counter-Defendants' motion to dismiss to granted.

## II. BACKGROUND

Plaintiff is a law firm organized as a professional limited liability company. Dkt. No. 1 at ¶¶ 2, 8. Plaintiff specializes in disability law and helps their clients obtain social security disability benefits. *Id*. at ¶ 3. Plaintiff has advertised its disability legal services since 1997 using the telephone number, 1.888.WIN.SSDI and website domains, www.winssdi.com and www.windisability.com. *Id*. at ¶¶ 10-11; Dkt. No. 33-2 at 2. Plaintiff no longer advertises the

www.winssdi.com domain, but still owns it and has any communications and internet traffic reaching that address forwarded to www.windisability.com. *Id*. at ¶ 12On July 31, 2020, Plaintiff obtained a New York State Department of State Certificate of Service Mark Registration for the 1.888.WIN.SSDI. *Id*. at ¶ 14.

Plaintiff employed Defendant Nutting from September 29, 2008 to April 8, 2010. *Id*. at ¶ 15. During that time, Defendant Nutting worked as an "eligible for direct pay non-attorney." *Id*. Following his employment with Plaintiff, Defendant Nutting worked for attorney Joseph Stanley. *Id*. at ¶ 17. Plaintiff asserts that when Defendant Nutting resigned, he took forms, processes, and digital books from Attorney Stanley and began advertising his disability services using confusingly similar domain names and alpha-numeric telephone numbers as Plaintiff's number. *Id*. at ¶¶ 17-19.

Defendants advertise the number 1.833.WIN.SSDI in connection with their disability services, which differs only by two digits from Plaintiff's. *Id*. at ¶ 19. Defendants also use the website www.winssd.com, differing by only one letter from Plaintiff's website www.winssdi.com. *Id*. at ¶¶ 21, 23. Plaintiff asserts that Defendants generate over $600,000 annually through their business. *Id*. at ¶ 24.

Plaintiff claims that it sent Defendants a cease and desist letter and Defendants agreed to change their phone number, but only did so on their website. *Id*. at ¶¶ 25-26. Plaintiff asserts that Defendants also advertise their services in such a way that potential clients would think that Defendant Nutting is a lawyer. *Id*. at ¶ 22. Plaintiff argues that Defendants' telephone number

and website are virtually identical to its marks[1] and the use of them in advertisements is likely to cause consumer confusion. *Id*. at ¶¶ 30-33.

## III. DISCUSSION

A.      **Defendants' Motion to Strike**

"Federal Rule of Civil Procedure 12(f) provides that a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Cognex Corp. v. Microscan Sys., Inc*., 990 F. Supp. 2d 408, 418 (S.D.N.Y. 2013) (quoting *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 456 (S.D.N.Y. 2008)) (internal quotation marks omitted). "It is well-established in this Circuit that '[a] motion to strike an affirmative defense under Rule 12(f) ... for legal insufficiency is not favored.'" *Id*. (quoting *Estee Lauder, Inc. v. Fragrance Counter, Inc*., 189 F.R.D. 269, 271 (S.D.N.Y. 1999)), *vacated on other grounds*, 478 U.S. 1015 (1986)).

"'Federal courts have discretion in deciding whether to grant motions to strike.'" *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, *5 (S.D.N.Y. June 25, 2020) (quoting *Allocco v. Dow Jones & Co., Inc*., 2002 WL 1484400, *1 (S.D.N.Y. July 10, 2002)). "'[C]ourts have recognized the inherent imprecision involved in the assertion of affirmative defenses, such that the cautious pleader is fully justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials." *Id*. (quoting *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538, 2013 WL 4016302, *3 (S.D.N.Y. Aug. 7, 2013)).

---

[1] The Court uses the terms marks, trademarks, and service marks interchangeably as the distinction is immaterial for the issues presented. *See United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2303 n.2 (2020).

When considering a motion to strike, the court must examine first whether the affirmative defense has met the pleading requirements of *Twombly*. *GEOMC Co. v. Calmare Therapeutics Inc*., 918 F.3d 92, 98 (2d Cir. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). However, "applying the plausibility standard to any pleading is a 'context-specific' task." *Id*. The Second Circuit has noted that, unlike the pleader of a complaint, "the pleader of an affirmative defense has only the 21-day interval to respond to an original complaint." *Id*. "In addition, the relevant context will be shaped by the nature of the affirmative defense." *Id*.

Second, the moving party must show that "the allegations have no bearing on the issues in the case." *Id*. at 97-98 (quoting *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). And, third, the moving party must show that they "would be prejudiced by inclusion of the defense," which "will normally depend on when the defense is presented." *Id*.

In Plaintiff and Counter-Defendants' reply answer, they assert ten affirmative defenses: failure to state a claim, lack of standing, improper procedure, no private right of action, non-use, lack of confusion, fair use, failure to mitigate damages, lack of damages, and "reservation of affirmative defenses." Dkt. No. 12 at ¶¶ 67-76. Defendants advance no argument in support of their motion to strike except, "each affirmative defense is insufficiently [pled] under the *Twombly/Iqbal* standard. ..." Dkt. No. 27-1 at 3. Rather, Defendants merely cite the motion to strike standard articulated in *Grimmel Industries* and then state that the Second Circuit requires more than bald assertions without supporting facts. *Id*. at 2-3 (citing *United States v. Grimmel Indus., LLC*, No. 1:16CV1103, 2018 WL 3730856, *1 (N.D.N.Y. Aug. 6, 2018); *GEOMC*, 918

6

F.3d at 98).

Plaintiff and Counter-Defendants assert that the Court should reject Defendants' motion to strike as it is improperly pled and alleges no substantive arguments. Dkt. No. 32. Defendants argue that simply stating "'Each of the affirmative defenses is insufficiently plead [sic]'" and citing case law directing the Court to the standard of review for a motion to strike is sufficient to allow the Court to engage in review of their motion. Dkt. No. 35 at 2 (quoting Dkt. No. 27-1 at 3). The Court disagrees.

While the Court agrees that the Second Circuit has held that the pleading standards of *Twombly* and *Iqbal* apply to affirmative defenses, the extent to which they apply is "context-specific." *GEOMC*, 918 F.3d at 98. Each affirmative defense requires examination of, *inter alia*, the nature of the defense, when the defense was presented, and the time the party had to craft the defense. *See id*. "For example, the facts needed to plead a statute-of-limitations defense will usually be readily available; the facts needed to plead an ultra vires defense, for example, may not be readily known to the defendant, a circumstance warranting a relaxed application of the plausibility standard." *Id*. Further, Plaintiff and Counter-Defendants' "failure-to-state-a-claim defense is not vulnerable to motions to strike." *Coach, Inc. v. Kmart Corps*., 756 F. Supp. 2d 421, 432 (S.D.N.Y. 2010).

As a motion to strike is disfavored and the review is context specific, the Court rejects Defendants' assertion they are not required to advance any particular arguments regarding a motion to strike.[2] *Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund,*

---

[2] The Court notes that Defendants are not *pro se* and each are represented by two separate law offices.

*Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M.C.F. Assocs., Inc.*, No. 20-CV-1033, 2021 WL 1199494, *2 (S.D.N.Y. Mar. 30, 2021) ("Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a plaintiff to prevail is demanding"). "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" *Borowski v. Mordino*, No. 16-CV-00999, 2020 WL 6083425, *1 (W.D.N.Y. Oct. 15, 2020) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Therefore, Defendants' motion to strike is denied.

**B.     Plaintiff and Counter-Defendants' Motion to Dismiss**

On October 12, 2020, Defendants filed an answer asserting counterclaims against Plaintiff and Counter-Defendants for violations of the Lanham Act, common law unfair competition, and violations of N.Y. G.B.L. §§ 349, 350. *Id*. at ¶¶ 139-59. Plaintiff and Counter-Defendants have moved to dismiss Defendants counter-claims for failure to state a claim and for a lack of subject matter jurisdiction. Dkt. No. 28. As set forth below, Plaintiff and Counter-Defendants' motion to dismiss is granted.

### *1. Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not

extend to legal conclusions. *See Iqbal*, 556 U.S. at 678 (citation omitted). Although a court's

review of a motion to dismiss is generally limited to the facts presented in the pleading, the court

may consider documents that are "integral" to that pleading, even if they are neither physically

attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471

F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d

Cir. 2002)).

      To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Twombly*, 550 U.S. at 557 (quotation omitted). Under this standard, the

pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative

level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.*

at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation

omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.*

(quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at

558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to

plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

      *2. Violations of the Lanham Act*

Defendants assert that Plaintiff and Counter-Defendants violated Section 43 of the Lanham Act, 15 U.S.C. § 1114,[3] by using two domain names and a telephone number that "constitute false, misleading, and deceptive advertising." Dkt. No. 9 at 24.

The Lanham Act provides as follows:

> Any person who shall, without the consent of the registrant—
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114.

"To establish a false advertising claim under Section 43(a), the plaintiff must demonstrate that the statement in the challenged advertisement is false. 'Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers.'" *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir. 1997) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)). The Second Circuit has provided that,

> [i]n addition to proving falsity, the plaintiff must also show that [1] the defendant misrepresented an inherent quality or characteristic of the product, . . . [2] that the defendant placed the false or misleading statement in interstate commerce, . . . and [3] that "the plaintiff has been . . . injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (internal quotation marks

---

[3] Defendants allege violations of 28 U.S.C. § 1114 in their answer. Dkt. No. 9 at ¶¶ 139-44. Defendants clarify in their opposition to Plaintiff and Counter-Defendants' motion to dismiss that they are alleging violations of 15 U.S.C. § 1114. Dkt. No. 31 at 5.

and citations omitted) (alteration in original).

Defendants assert that Plaintiff and Counter-Defendants have violated the Lanham Act by using false, misleading, and deceptive advertising indicating that Plaintiff could win a prospective client's case and by using the terms "managing partner" and "partner." Dkt. No. 9 at ¶¶ 140-41; Dkt. No. 31 at 6-7. Defendants claim that this is violates the Lanham Act because Plaintiff is an LLC comprised of members and not partners. *Id*.; Dkt. No. 31 at 6-7.

Defendants do not assert in their complaint whether they are claiming that Plaintiff and Counter-Defendants' advertisements are literally false or that they are literally true but likely to deceive or confuse customers. *See id*. In total, Defendants take issue with four statements: the two domain names, the phone number, and Plaintiff and Counter-Defendants' use of the terms "managing partner" and "partner." *Id*.

Regarding the first set of statements, the two domain names, www.winssdi.com and www.windisability.com, and the phone number, 1.888.WIN.SSDI, Defendants assert that they misrepresent to consumers that they will win social security disability benefits if they hire Plaintiff and Counter-Defendants. Dkt. No. 31 at 6-7. Defendants do not claim that these statements are "a literal falsehood [by] claiming that a statement, [which] on its face, conflicts with reality." *Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 229 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999). Thus, Defendants appear to allege that the two domain names and the phone number are literally true but likely to deceive or confuse customers. Defendants do assert, however, that Plaintiff and Counter-Defendants' use of the terms "managing partner" and "partner" are literal falsities because Plaintiff is an LLC comprised of members and not partners.

11

Dkt. No. 31 at 6.

However, Defendants do not assert any injury they suffered from the alleged statements. The Second Circuit has "distinguished two types of false advertising cases and the presumptions they permit: (1) 'misleading, non-comparative commercials which touted the benefits of the products advertised but made no direct reference to any competitor's product,' and (2) 'a false comparative advertising claim.'" *Merck Eprova AG*, 760 F.3d at 259 (quoting *McNeilab, Inc. v. Am. Home Prods. Corp*., 848 F.2d 34, 38 (2d Cir. 1988)). "In the first type of case (i.e., non-comparative advertising), the injury 'accrues equally to all competitors; none is more likely to suffer from the offending broadcasts than any other. ... In those types of cases, 'some indication of actual injury and causation' would be necessary in order to ensure that a plaintiff's injury is not speculative." *Id*. (internal citation omitted).

Defendants do not assert that Plaintiff's statements make false comparisons to their services, nor is there any evidence in the pleadings to support such an assertion. Rather, Defendants assert that the statements are misleading. *See* Dkt. No. 9 at ¶ 140. Thus, Defendants were required to plead "'some indication of actual injury and causation.'" *Merck Eprova AG*, 760 F.3d at 259 (quoting *McNeilab*, 848 F.2d at 38). While Defendants state that they have "been damaged and harmed, and irreparably harmed, by such violations," Defendants do not assert any actual harm suffered. Dkt. No. 9 at ¶ 143. Defendants' claim is merely conclusory and, without more, fails to sufficiently plead a false advertisement claim. *See 3B Med., Inc. v. SoClean, Inc.*, No. 19 CIV. 3545, 2020 WL 5440440, *4 (S.D.N.Y. Sept. 8, 2020) (holding that the plaintiff's general statement that they lost customers with statements from potential customers attached to

the complaint were conclusory and insufficient to make the plaintiff's injury more than merely speculative in nature); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 544 (S.D.N.Y. 2018) (alterations in original) (finding the plaintiff's statements to be conclusory where they alleged that "[The defendant's] deceptive and misleading endorsements have caused Plaintiff and the Class of Non-Paying Attorneys to lose fees and suffer reputational damage;" and "Potential clients have been diverted by [the defendant's] false and misleading website to hire lawyers who have purchased legal services from Plaintiff's competitors rather than Plaintiff").

As Defendants have failed to allege any injury from Plaintiff and Counter-Defendants' allegedly false advertisements, Defendants have not only insufficiently pled a Lanham Act violation, but also lack standing to bring a false advertisement claim, and their claim must be dismissed. *See 3B Med.*, 2020 WL 5440440, at *4; *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 617 (S.D.N.Y. 2012). Defendants' claims as they relate to Plaintiff using the term "partner" and "managing partner" are also dismissed for a lack of standing.[4]

### 3. Unfair Competition Claim

---

[4] Additionally, although unclear, to the extent that Defendants argue that Plaintiff and Counter-Defendants' domain names, telephone number, and partnership title cause consumer confusion, Defendants have failed to plead a Lanham Act violation. The purpose of Section 43(a) "is 'to prevent consumer confusion regarding a product's source . . . and to enable those that fashion a product to differentiate it from others on the market.'" *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (quoting *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1220 (2d Cir. 1987)). Where there is a claim of consumer confusion with regard to association of a product with another person's mark, the central inquiry "is the 'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *Id.* at 61-62 (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)). Defendants do not assert any claim that consumers would be confused as to the source of Plaintiff's services. Thus, to the extent they are attempting to plead consumer confusion regarding Plaintiff and Counter Defendants' trademarks, they are also dismissed.

"The elements of unfair competition under New York State common law closely parallel the elements of unfair competition under the Lanham Act, except that a plaintiff must show 'either actual confusion or a likelihood of confusion, and there must be "some showing of bad faith" on the part of the defendants.'" *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 273 (E.D.N.Y. 2014) (quoting *Medisim*, 910 F. Supp. 2d at 606).

As noted previously, Defendants have failed to allege any confusion or likelihood of confusion in their counterclaims. *See* Dkt. No. 9. Defendants similarly have not alleged bad faith on behalf of Plaintiff and Counter-Defendants. *See id*. Thus, Defendants have failed to sufficiently plead an unfair competition claim under New York law. *See Carson Optical, Inc. v. Prym Consumer USA, Inc*., 11 F. Supp. 3d 317, 336 (E.D.N.Y. 2014) (finding that where a plaintiff has failed to sufficiently plead a Lanham Act violation, their unfair competition claims fail *per se*).[5]

### 4. Violation of New York General Business Law Sections 349 and 350

The New York General Business Law makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state. ..." *Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 490 (2d Cir. 2014) (citing N.Y. Gen. Bus. Law § 349(a)) (alterations in original). "To state a claim under GBL § 349, a plaintiff 'must prove three elements: first, that the challenged act or practice was

---

[5] To the extent Defendants make any other arguments related to their common law unfair competition claim they are denied as insufficiently pled. *Borowski*, 2020 WL 6083425, at *1 (quoting *Zannino*, 895 F.2d at 17); *Williams*, 816 Fed. Appx. at 534. While Defendants assert that their general pleadings cover the large "breadth of activities" and that "[t]he very title of the action for common law unfair competition speaks for itself," "courts have noted the breadth of activities that may constitute a violation of New York common law unfair competition," and such bald assertions are insufficient to state a claim for unfair competition. Dkt. No. 31 at 9-10.

14

consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Id*. (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). "To show that the challenged act or practice was consumer-oriented, a plaintiff must show that it had 'a broader impact on consumers at large': 'Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute. ...'" *Id*. (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 25 (1995)).

"Sections 349 and 350 are both aimed at conduct that is deceptive—*i.e*., conduct 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Colpitts v. Blue Diamond Growers*, __ F. Supp. 3d. __, 2021 WL 981455, *5 (S.D.N.Y. Mar. 16, 2021) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26). "'The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices.'" *Id*. (quoting *Cline v. TouchTunes Music Corp*., 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016)).

"'Deceptive practices' are 'acts which are dishonest or misleading in a material respect.'" *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009) (quoting *Kramer v. Pollock–Krasner Found*., 890 F. Supp. 250, 258 (S.D.N.Y. 1995)). "Deceptive acts are defined objectively [ ] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id*. (quoting *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003)) (alterations in original) (internal quotation marks omitted). In order to establish standing, the plaintiff's injury must have resulted from the alleged deceptive act and the injury must be pled with specificity. *See In re Whole*

*Foods Mkt. Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 423 (S.D.N.Y. 2019) (holding that even a high statistical probability that the plaintiff suffered injury by the defendant was not sufficient to establish standing).

Defendants have arguably satisfied the first element by alleging that Plaintiff and Counter-Defendants' statements were consumer-oriented as they appeared in advertisements and promotional materials directed toward consumers.[6] *See Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 293 (1999). However, Defendants have not sufficiently pled the third element, injury.

Defendants assert that Plaintiff and Counter-Defendants' "wrongful uses of the two domain names and the telephone number ... (falsely) suggest that Counterclaim-Defendants, as attorneys and as a law firm, can universally succeed or win all social security disability cases." Dkt. No. 9 at ¶ 124. Further, Plaintiff and Counter-Defendants' "uses of the designation 'managing partner' and 'partner' ... (falsely) suggest to the public mutual bonds of loyalty, fiduciary obligations, broad assumption of liability, and solidarity rather than an assembly of owners or workers and (falsely) make it appear as though Counterclaim-Defendant O&A is a relatively strong, cohesive organization." *Id*. at ¶ 123. As a result, Defendants claim that "[s]uch uses have enticed and induced potential clients/customers to retain Counterclaim-Defendants and have diverted them from hiring [Defendants]." *Id*. at ¶¶ 123-24.

Defendants have failed to sufficiently plead an actual injury. Rather, Defendants only assert speculative injuries. While Defendants claim that they have lost potential customers, such

---

[6] Defendants do not expressly name or assert any particular advertisements. Rather, they merely allege the existence of the phone number 1.888.WIN.SSDI and that Plaintiff maintains the two websites. However, Defendants admit in their answer that Plaintiff has advertised the phone number 1.888.WIN.SSDI and maintains the two websites. Dkt. No. 9 at ¶¶ 10-11.

bald statements are not sufficient to establish an injury. *Ortho Pharm. Corp. v. Cosprophar, Inc*., 32 F.3d 690, 697 (2d Cir. 1994) ("Ortho has not shown that consumer selection of its products was adversely affected by Cosprophar's advertisements; in addition, Ortho has not challenged the district court's finding that it 'showed no damages whatsoever'"); *see also In re Whole Foods*, 397 F. Supp. 3d at 423; *see also Carroll v. U.S. Equities Corp.*, No. 1:18CV667, 2019 WL 4643786, *13 (N.D.N.Y. Sept. 24, 2019) ("Plaintiff's GBL § 349 allegations are little more than an unadorned, the-defendant-harmed-me-accusation found to be insufficient ... in *Iqbal*"). Defendants do not identify a single customer they actually lost or any customers that were misled by Plaintiff and Counter-Defendants such that they hired an attorney rather than a non-attorney representative to help them obtain SSDI benefits.

Having determined that Defendants have failed to sufficiently claim an injury, their GBL Section 349 claim must be dismissed for a lack of standing. For those same reasons, the Court also dismisses Defendants' GBL Section 350 claims. *In re Whole Foods*, 397 F. Supp. 3d at 420 ("Both GBL § 349 and § 350 require that the plaintiff suffer an injury as a result of the deceptive practice"); *see also Tears v. Bos. Sci. Corp*., 344 F. Supp. 3d 500, 517 (S.D.N.Y. 2018) (dismissing both GBL Sections 349 and 350 claims where the plaintiff failed to allege an injury under Section 349).

## C.    Defendants' Motion for Summary Judgment

Defendants have moved for summary judgment claiming that Plaintiff's trademarks are invalid because they are deceptively misdescriptive and in violation of Plaintiff's ethical obligations as a law firm. Dkt. No. 29. The Court disagrees.

### 1. *Standard of Review*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426

F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* at 554 (quoting *Anderson*, 477 U.S. at 252) (emphasis in original). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

### 2. Trademark Infringement Claim

"To establish a trademark infringement claim under [Sections 32 or 43 of the Lanham Act], a plaintiff must show both that it has a valid mark that is entitled to protection and that the defendant's actions are likely to cause confusion with the plaintiff's mark." *Gameologist Grp., LLC v. Sci. Games Int'l, Inc*., 838 F. Supp. 2d 141, 152 (S.D.N.Y. 2011) (citing *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C*., 182 F.3d 133, 137 (2d Cir. 1999)). "To succeed on a federal claim for trademark infringement, the plaintiff must, as an initial matter, show that it has a valid mark that is entitled to protection." *Id*. (citations omitted). A certificate of registration from the United Stated Patent and Trademark Office (hereinafter "USPTO") is *prima facia* evidence of exclusive ownership of a valid trademark in commerce or connection with the goods or services. *Id*. (quoting 15 U.S.C. § 1057(b)).

However, "'the presumption of an exclusive right to use a registered mark extends only to the goods and services noted in a registration certificate.'" *Id*. (quoting *Caché, Inc. v. M.Z. Berger & Co.*, No. 99 Civ. 12320, 2001 WL 38283, *4 (S.D.N.Y. Jan. 16, 2001)). The presumption of

validity and the exclusive right to use the trademark similarly only extends to the goods and services noted in a registration certificate. *Id*. Where the plaintiff lacks a certificate of registration that includes the goods or services at issue, "the plaintiff has the burden of proving that its mark is a valid trademark." *Id*. at 153–54 (citing *Reese Publ'g Co., Inc. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980)) (additional citations omitted).

Defendants state that, "Plaintiff is a law firm based in Syracuse, New York and allegedly owns (trademark) rights in the telephone number 1-888-WIN-SSDI and the domain names www.winssdi.com and www.windisability.com, which Plaintiff owns and uses extensively in its advertising." Dkt. No. 29-4 at ¶ 1. Defendants' motion does not examine the issue of ownership. Dkt. No. 29-1. Rather, Defendants challenge the validity of the mark and assert that Plaintiff is not entitled to enforce the mark because it is a mark that would be ineligible for registration pursuant to 15 U.S.C. § 1052.

### a. Unlawful Trademarks

The Lanham Act states that all trademarks that distinguish goods of one from another shall be registered unless the mark falls into one of a few limited categories. 15 U.S.C. § 1052. In addition to these categories, the USPTO has "consistently held that, to qualify for a federal . . . registration, the use of a mark in commerce must be 'lawful[.]'" *In Re Pharmacann LLC*, 123 U.S.P.Q.2d 1122 (T.T.A.B. 2017) (quoting *In re JJ206, LLC*, 120 U.S.P.Q.2d 1568, 1569 (T.T.A.B. 2016)). "Thus, for a mark to be eligible for federal registration, 'any goods or services for which the mark is used must not be illegal under federal law.'" *Id*. at *3 (quoting *In Re Morgan Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. 2016)).

> Generally, the USPTO presumes that an applicant's use of a mark in commerce is lawful under federal law. Thus, registration generally will not be refused based on unlawful use in commerce unless either (1) a violation of federal law is indicated by the application record or other evidence, such as when a court or a federal agency responsible for overseeing activity in which the applicant is involved, and which activity is relevant to its application, has issued a finding of noncompliance under the relevant statute or regulation, or (2) when the applicant's application-relevant activities involve a *per se* violation of a federal law.

*Brown*, 119 U.S.P.Q.2d 1350, at *2 (T.T.A.B. 2016) (citing *Kellogg Co. v. New Generation Foods Inc*., 6 U.S.P.Q.2d 2045, 2047 (T.T.A.B. 1988)).

Defendants assert that Plaintiff's trademark is illegal because it is in violation of Plaintiff's obligations as a law firm pursuant to the New York Rules of Professional Conduct. This argument is unconvincing. The lawfulness requirement only pertains to obligations imposed by federal law. *See id*. Defendants do not assert any law, let alone any federal law, that Plaintiffs have violated. The New York Rules of Professional Conduct (hereinafter "NYRPC") are not laws; rather, they are rules that attorneys admitted in the state of New York agree to follow in exchange for the privilege of practicing law. Indeed, a violation of these rules will not create liability to a third party where such a right does not otherwise exist at law. *Shapiro v. McNeill*, 92 N.Y.2d 91, 97 (1998).[7] To the extent that Defendants assert that Plaintiff's trademarks are in violation of the Lanham Act and therefore prohibited from registration and enforcement, their argument is misplaced for the reasons set forth below.

---

[7] The Parties dispute whether the NYRPC bars Plaintiff from using the the marks. Dkt. No. 29-1 at 4-5; Dkt. No. 33 at 8. Having determined that NYRPC does not have any bearing on this case, the Court will not examine this issue any further.

### b. Deceptively Misdescriptive Trademarks[8]

The Lanham Act directs the United States Patent and Trademark Office not to trademark any requested trademark that, "when used on or in connection with the goods of the applicant is ... deceptively misdescriptive of them." 15 U.S.C. § 1052(e). "'[I]n order for a term to misdescribe goods or services, the term must be merely descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not.'" *J.T. Colby & Co. v. Apple Inc*., No. 11 CIV. 4060, 2013 WL 1903883, *9 (S.D.N.Y. May 8, 2013) (quoting *In Re Phillips-Van Heusen Corp*., 63 U.S.P.Q.2d 1047 (T.T.A.B. 2002)). "A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *West & Co. Inc. v. Arica Inst., Inc*., 557 F.2d 338, 342 (2d Cir. 1977) (quoting *Stix Prods., Inc. v. United Merchs. & Mfrs., Inc*., 295 F. Supp. 479, 488 (S.D.N.Y. 1968)). "A descriptive mark is entitled to trademark protection only if 'the descriptive meaning of a word becomes subordinate and the term instead becomes primarily a symbol of identification.'" *J.T. Colby*, 2013 WL 1903883, at *6 (citing *PaperCutter, Inc. v. Fay's Drug Co., Inc*., 900 F.2d 558, 562 (2d Cir. 1990)).

A suggestive mark, however, cannot be classified as deceptively descriptive. *J.T. Colby*

---

[8] *Defendants assert that Plaintiff's marks cannot be enforced because they are deceptive. Dkt. No. 29-1 at 6-8. While Defendants reference 15 U.S.C. § 1052(a) which bars deceptive marks, Defendant cites only to caselaw that references 15 U.S.C. § 1052(c), which bars deceptively misdescriptive trademarks. Defendants' motion lacks any substantive analysis regarding whether Plaintiff's marks are deceptive beyond merely citing caselaw, Defendants' motion appears to argue that Plaintiff's mark is deceptively misdescriptive rather than merely deceptive. Regardless, the standard for deceptive and deceptively misdeceptive marks is the same. See City of London Distillery, Ltd.*, No. 91235280, 2020 WL 7258359, *22 (T.T.A.B. Dec. 8, 2020) (citing *In re Cal. Innovations Inc.*, 329 F.3d 1334, 66 U.S.P.Q.2d 1853, 1856-57 (Fed. Cir. 2003)); *see also W. Clay Mackey v. Lawson's Finest Liquids, LLC*, No. 91220846, 2020 WL 7861235, *22 (T.T.A.B. Dec. 7, 2020).*

& *Co.*, 2013 WL 1903883, at *6. "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *West & Co.*, 557 F.2d at 342 (quoting *Stix Products*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968)). "The distinction, while not always readily apparent, is important, because those which are descriptive may obtain registration only if they have acquired secondary meaning, while suggestive terms are entitled to registration without such proof." *West & Co.*, 557 F.2d at 342.

"A mark is classified as deceptively misdescriptive by the PTO when the term (1) misdescribes the goods or services; and (2) consumers are likely to believe the misrepresentation." *J.T. Colby & Co.*, 2013 WL 1903883, at *9 (citing *In Re Phillips–Van Heusen Corp.*, 63 U.S.P.Q.2d 1047). Not only is a misdescriptive mark barred from registration, it cannot gain distinctiveness and be enforced against others beyond any rights conveyed under common law. *See In re Budge Mfg. Co., Inc.*, 857 F.2d 773, 777 (Fed. Cir. 1988); *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 972, n.3 (Fed. Cir. 2018) (quoting *In re Am. Fertility Soc.*, 188 F.3d 1341, 1343 (Fed. Cir. 1999)).

Thus, to establish that a mark is misdescriptive at summary judgment, the moving party must establish that the plaintiff's mark was descriptive and not merely suggestive, and that the trademark misdescribed the goods. *See J.T. Colby & Co*, 2013 WL 1903883, at *6-10. The burden would then shift to the plaintiff to establish secondary meaning. *See id.* at *7.

Plaintiff asserts that Defendants' motion for summary judgment should be denied foremost because Defendants have failed to meet their burden of establishing that there is no issue of material fact since Defendants have not made any substantive argument but have only quoted

case law.  Dkt. No. 33 at 5-7.  The Court agrees.

Whether a mark is descriptive or suggestive is fact intensive and has been described by the Second Circuit as "the broad middle ground where most of the trademark battles are fought." *West & Co.*, 557 F.2d at 342.  Where a mark is found to be descriptive, the Court must engage in review of the "rigorous evidentiary requirements" to determine whether the mark has acquired secondary meaning.[9]  *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987) (citation omitted).

Defendants merely assert that Plaintiff's "trademark [is] *per se* . . . illegal[] when used with Plaintiff's legal services, and therefore a nexus between the trademark and the misleading, deceptive, unethical, illegal activity indisputably exists.  Thus, Plaintiff has no rights in the telephone number or the domain names that can be enforced against Defendants."  Dkt. No. 29-1 at 8.  However, Defendants support this argument by claiming that Plaintiff's trademark is "illegal" because it violates Plaintiff's ethical obligations as a law firm under the NYRPC.

Having determined that the NYRPC has no applicability to this case, it certainly cannot stand that it creates a *per se* violation of the Lanham Act.  Notably, Defendants have not presented the Court with any authority that the Lanham Act, and the rights conveyed by it, are at all dependent on the origin of the service.  That is, there is nothing in the Lanham Act that indicates that professional rules of ethics of any profession—that are not otherwise codified in federal law—limit what an individual or business may trademark.  Any limitations regarding

---

[9] The Court notes that had Defendants raised the issue of descriptiveness, it would have been Plaintiff's burden to establish secondary meaning.  *See J.T. Colby & Co.*, 2013 WL 1903883, at *7 ("The party claiming trademark infringement bears the burden of proving secondary meaning, a task that 'entails vigorous evidentiary requirements'") (citation omitted).  However, Defendants did not discuss this issue and the Court will not craft such an argument on their behalf.

24

these rights based on the NYRPC should be addressed with the grievance committee.

Defendants' reliance on *Cochran Firm* is misplaced. There, the Ninth Circuit held that the district court did not err by using the California's Rules of Professional Conduct's definition of a law firm "merely [as a] helpful" way to define a law firm. *Cochran Firm, P.C. v. Cochran Firm L.A. LLP*, 641 Fed. Appx. 749, 750 (9th Cir. 2016). Additionally, the district court did not examine the Lanham Act in the case the Ninth Circuit was reviewing, but the doctrine of unclean hands. *Cochran Firm, P.C. v. Cochran Firm L.A., LLP*, No. CV 12-5868, 2015 WL 12656954, *8 (C.D. Cal. May 12, 2015). Finally, the conduct described in *Cochran Firm*, is more akin to fraud than to a rule violation as, there, a network of connected law partners advertised their services as a nationwide law firm to potential clients. *See Cochran Firm*, 641 Fed. Appx. at 750 (quoting *Cochran Firm*, 2015 WL 12656954, at *8).

Defendants simply do not discuss any of the actual elements of their claim that Plaintiff's mark is misdescriptive. Rather, Defendants seemingly boast that they are permitted to engage in what they feel is unethical behavior[10] and then start and end the discussion of misdescriptiveness

---

[10] Defendants' arguments to the Court hinge on the fact that the term "win" is misleading and misdescriptive despite the fact that they too use a telephone number and domain name using almost the exact same language. *See* Dkt. No. 9 at ¶¶ 20, 21; Dkt. No. 29 at 4 ("Plaintiff's use of the telephone number and domain names are clearly deceptive and misleading for they errantly imply that the law firm can win a client's case regardless of the facts – just hire the law firm to handle your case and you will win"). To seemingly avoid admitting to the Court that they too engage in behavior they find deceptive and misleading, Defendants remind the Court that they are not attorneys and therefore have no duty to refrain from using deceptive and misleading marks. Dkt. No. 9 ([Defendant TPR] principal and owner is Defendant Nutting, who has at all relevant times been a licensed SSD Practitioner, which means that he is licensed and permitted to represent people in connection with presenting and prosecuting disability claims before the Social Security Administration (hereinafter "SSA"). [Defendant TPR] has never employed an attorney or had an attorney act as [Defendant TPR's] agent. Consequently, neither [Defendant TPR] nor Defendant Nutting has ever been bound to abide by the ethical or other rules governing attorney conduct as implemented by New York State"). Dkt. No. 9 at ¶ 90.

by merely presenting the Court with cases that take up the issue and leave the Court to do the rest. However, the Court rejects Defendants invitation to engage in the discussion of the elements of misdescriptiveness on their behalf and simply rejects this argument based on its significant pleading deficiencies. *Borowski*, 2020 WL 6083425, at *1 (quoting *Zannino*, 895 F.2d at 17); *Williams*, 816 Fed. Appx. at 534.

Defendants' motion to for summary judgment as to Plaintiff's trademark infringement claims is therefore denied.

### 2. Defendants' Motion for Summary Judgement as to Their Cross Claims

To the extent that Defendants have moved for summary judgment as to their counterclaims, their motion is denied as moot as all of their counterclaims have been dismissed.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendants' motion to strike (Dkt. No. 27) is **DENIED;** and the Court further

**ORDERS** that Plaintiff and Counter-Defendants' motion to dismiss (Dkt. No. 28) is **GRANTED;** and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 29) is **DENIED;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 2, 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge